### HUGH MULHOLM v. JOHN CHENEY.

IN *September*, 1793, on a warrant from a juftice of the peace, on a judgment againft one *Wright*, the conftable had a horfe delivered to him in execution by *Wright*. *Cheney* becoming fecurity for the fafe keeping and delivery of the horfe, the conftable left him in poffeffion of *Wright*, till he fhould be demanded for fale, which, it was expected would be in about three weeks. In the mean time, *Wright* paying part of the debt, the plaintiff ftayed the fale; and *Wright*, in the prefence of *Cheney*, who made no objection, delivered the fame horfe, then in the inclofure of *Cheney*, who lived on *Wright's* plantation, to *Mulholm*, to indemnify him againft a debt for which he was fecurity for *Wright*. In the end of *February*, 1794, the conftable, being directed by the juftice to make fale, called on *Wright* for the horfe, who did not deliver him, but pretended he had paid the debt. At the *March* court in *Pittfburgh*, the conftable called on *Cheney* for the horfe. *Cheney* pointed out the horfe as a boy was leading him to water; and took him by the halter, and delivered him to the conftable.

*Mulholm* brought replevin for the horfe. And now a motion was made to quafh this replevin, on the ground, that it was brought for property taken in execution.

*Brackenridge*, for the motion. Replevin, at common law, lay only for goods taken by way of diftrefs for rent. It certainly lies not for goods taken in execution; for that would render the procefs of law void; and there would be, in the language of *Hudibras*, "No end to th' everlafting fuit." Even in the cafe of a third perfon's goods, taken in execution, in order to prevent collufion to defeat executions, trefpafs, and not replevin, muft be brought.

Our proceedings in replevin, are founded on our act of affembly. 

An act of affembly has declared all writs of replevin iffued for any owner of goods taken in execution, or by diftrefs, by any fheriff, county lieutenant, conftable, or collector of public taxes, to be irregular, erroneous, and void; and has directed that it fhall be quafhed; and that the court fhall award treble cofts to the defendant, and may

*[margin notes]* 1796.

1 *St. L.* 59. *Dall.* 156.

1 *St. L.* 795.

order an attachment againſt the clerk who knowingly made out the writ. This muſt extend to third perſons, for, as to parties to the execution, the law was unneceſſary, for the common law made ſuch replevin irregular. This act muſt mean ſomething more. It appears from the journals of the aſſembly, that it was the intention of the legiſlature to prevent replevins by third perſons, for goods taken in execution. For, when the firſt ſection was under conſideration; a motion was made to reſtrain the prohibition to parties to the execution, by adding, after the words "owner of goods taken in execution or by diſtreſs," the following words, "*being the defendant in the action, or perſon incurring the fine.*" This motion was negatived; and againſt this negative, there was a ſolemn proteſt, "that it left officers at full liberty, under the pretence of executing the laws, greatly to oppreſs the people; left their property very inſecure; and was highly dangerous to their rights and liberties."

It is better, if property of a third perſon be found in the poſſeſſion of the perſon againſt whom the execution is, that he who gave the truſt ſuffer, than that, by colluſion, the proceſs of law be defeated.

*Roſs*, for the plaintiff. I will not contend, that, if the property of a third perſon were taken in execution by a ſheriff or conſtable, the owner could bring a replevin againſt the ſheriff or conſtable, while the property was in the poſſeſſion of the officer, but that he could againſt the vendee of the officer.

The affidavits ſhew, that this horſe is not to be conſidered as a horſe taken in execution; but as taken by a private individual, from a *bona fide* transferree and poſſeſſor. The execution was againſt *Wright*. The horſe was left in the cuſtody of *Wright*. *Cheney* was ſecurity to the conſtable, that *Wright* would deliver the horſe to him. The lien of the execution on the horſe was then diſſolved; and the conſtable could look only to the ſecurity. The ſale of the horſe to *Mulholm*, by *Wright*, in the preſence of *Cheney*, is to be conſidered as the ſale of the conſtable; for it is the ſale of his bailee. This is not a horſe taken in execution; the lien was gone. It would be diſhoneſt, to ſuffer an innocent purchaſer to be defrauded. The return day of the execution was paſt. *Cheney* was no conſtable, and did not take the horſe as

Journ. 27th March,1779.

1 Wils. 44. 2 T.Rep.596.

a conftable. It is not againft a conftable that the fuit is brought. This is a proceeding for a penalty of treble cofts.

1796.

The court took time to confider, and next term delivered their opinion.

PRESIDENT. Were the act, declaring replevins void, to be underftood as reftraining only third perfons, whofe goods were found in the poffeffion of him againft whom the execution was, it would be lefs exceptionable. But it is contended, that it extends to all owners : and this, furely *may* deprive an innocent owner of a fpecific, fummary remedy, for a wanton act of oppreffion by an officer, the more odious, as it is under the colour of public authority; though he would have this remedy againft any other but an officer.

1 S.. L. 795.

It may, indeed, be faid, that, in order to prevent collufion with debtors, by fraudulent transfers, there may be reafons of policy for refufing to extend to the cafe of goods taken into the cuftody of the law by execution, &c. a remedy, which feems originally to have been confined to the fingle cafe of diftrefs for rent, and, confiding in the virtue of officers, rather than of individuals, for leaving any tranfgreffion to the ordinary remedy of an action of trefpafs. And, indeed, from the defendant in replevin's power, by fetting up a claim of property, to retain the goods, an action of replevin may be a not more fpecific remedy, than an action of trefpafs.

But, notwithftanding, as no value may compenfate the *pretium affectionis* of the thing taken; as a warrant to take the goods of *A.* will not juftify taking the goods of *B.*; and an officer acting without authority is but an individual; as we ought not to fuppofe, that the legiflature intended to countenance trefpaffes; and it is the duty of courts to extend remedies; I have a ftrong reluctance againft adopting the conftruction contended for of this act, as a general prohibition, and I would not admit this conftruction, if I could exclude it.

The law of *England* ftates *generally*, that replevin does not lie for goods taken in execution; yet (except for a reafon which is given for it, that goods are only replevifable, when taken by way of diftrefs, and which does not apply here, where replevin lies for any claim of goods), I do not know, that this is not underftood

2 *Str.* 1184.
5 *Com. Dig.*
436. *Bul.*
*Ni. Pri.* 53.
*Dall.* 157.

only of a replevin brought by him againſt whom the execution is; for that is the caſe of the only replevin of this kind, that I have obſerved, where this can be aſcertained.

If it be the meaning of the law of *England*, that replevin for goods taken in execution is only prohibited, when brought by him againſt whom the execution is, ſuch may alſo be the meaning of the act of aſſembly.—— Acts are ſometimes made in affirmance of the common law.* And I am informed, that, at the paſſing of this act, there was occaſion for ſuch an explicit declaration, by act of aſſembly; for, at that time, many actions of replevin had been brought by perſons, whoſe goods were taken for taxes and militia fines. This law was made on the ſpur of the occaſion, and in the fervor of a revolution. The aſſembly might have been unwilling to admit any amendment, which might ſuggeſt an evaſion of payment of a public tax; and may have determined, making the words as general as the expreſſions in the *Engliſh* books, to leave their conſtruction, as in *England*, to the courts. A law ſo made, and reſtraining a remedy, will be narrowed as much as poſſible in the conſtruction.

If the ſheriff or officer be doubtful, as to the property; he may call on the plaintiff to ſhew him property, and indemnify him; or he may hold an inqueſt, to find whether it be the property of the defendant, or not.

But it is not neceſſary to give any opinion on this point: for we are of opinion, that this is not the caſe of goods taken in execution; and therefore, that the plaintiff take nothing by his motion. The horſe was not taken out of the hands of the conſtable. The conſtable delivered him to the owner, and having thus enabled him to impoſe on others, he muſt look to him or his ſecurity.

* It has been ſaid, that even an act of parliament to make a man judge in his own cauſe would be void. *Hob*. 87. There was therefore no occaſion for an act of aſſembly forbidding any member of a court of juſtice to ſit in judgment while his own cauſe is upon trial. Yet ſuch an act there is, 1 *St. L.* 33.